UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| TYRONE L. HANKERSON, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) CIVIL ACTION NO.1:18-CV-802 |
| HOWARD UNIVERSITY; | ) JURY TRIAL DEMAND |
| HOWARD UNIVERSITY BOARD OF TRUSTEE | ) |
| CHAIRMAN STACEY J. MOBLEY; HOWARD | ) |
| UNIVERSITY BOARD OF TRUSTEE VICE CHAIR | ) |
| MARK A.L. MASON; | ) |
| GRANT GRUNDY;  and | ) |
| DR. WAYNE A.I. FREDERICK, | ) |
| Individually and As An Officer. | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

**COMPLAINT**

COMES NOW Plaintiff, TYRONE L. HANKERSON, JR., by and through undersigned

counsel, files this Complaint for relief against Defendants, Howard University; Howard

University Board of Trustee Chairman Stacey J. Mobley; Howard University Board of Trustee

Vice Chair Mark A.L. Mason, Grant Grundy, and Dr. Wayne A.I. Frederick and alleges as

follows:

**PARTIES**

1. Plaintiff Tyrone Hankerson ("Mr. Hankerson"), at all relevant times, has been and is an

   individual residing in the District of Columbia.

2. Plaintiff is informed and believes and thereon alleges that at all relevant times Defendant

   Howard University (hereinafter "Defendant Howard") is a co-educational, private

   institution organized under the laws of the District of Columbia, with a principal place of

business at 2400 Sixth Street, N.W., Washington, D.C. 20059.  Defendant Howard can be served through its Resident Agent as follows: John G. Gloster, Esq. 2400 Sixth Street, N.W., Suite 321, Washington, D.C. 20059.

3. Plaintiff is informed and believes and thereon alleges that at all relevant times Defendant President Wayne A.I. Frederick (hereinafter "Frederick") is an individual who resides in the District of Columbia.

4. Plaintiff is informed and believes and thereon alleges that all relevant times the following individuals is a Member of the Board of Trustees of Defendant Howard ("Trustee Board" or "Board of Trustees" hereinafter), Stacey J. Mobley, serving the capacity as Chairman, residing in Washington, D.C.  Defendant Mobley can be served through Defendant Howard's Resident Agent as follows: John G. Gloster, Esq. 2400 Sixth Street, N.W., Suite 321, Washington, D.C. 20059.

5. Plaintiff is informed and believes and thereon alleges that all relevant times the following individual is a Member of the Board of Trustees of Defendant Howard, Mark A.L. Mason, serving the capacity as Vice-Chairman, residing in New Jersey.  Defendant Mason can be served through Defendant Howard's Resident Agent as follows: John G. Gloster, Esq. 2400 Sixth Street, N.W., Suite 321, Washington, D.C. 20059.

6. Defendant Grant Grundy (hereinafter "Mr. Grundy" or "Defendant Grundy") is an individual who resides in the District of Columbia and worked in Defendant Howard's Office of the Bursar for years.

## VENUE AND JURISDICTION

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 (a)(1), insofar as the matter in controversy exceeds the sum Seventy Five Thousand Dollars ($75,000.00)

exclusive of interest and costs, and there is complete diversity between Plaintiff and Defendants.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred herein.

## **FACTS**

9. Mr. Tyrone L. Hankerson, Jr. (hereinafter "Mr. Hankerson") commenced his studies at Defendant Howard's undergraduate program in the fall of 2011. A young student, raised by a single mother with a history of academic excellence, sought to obtain an education at one of the most prestigious historically black universities in America. To reduce the cost of attendance for himself so as not to incur an insurmountable debt attending college, Mr. Hankerson began working as a student worker within Defendant Howard's financial aid office (the "Financial Aid Office").

10. From approximately 2011-2015, Mr. Hankerson worked as a student-employee within Defendant Howard's Financial Aid Office.

11. Concurrently, during the period of Mr. Hankerson's time as a student-employee within Defendant Howard's Financial Aid Office, according to several news articles, concerns arose regarding the mismanagement of Defendant Howard's grant funds, the abrupt decline in Defendant Howard's credit rating, and decreasing student enrollment statistics during the term of Sidney A. Ribeau (hereinafter "President Ribeau") as president of Defendant Howard.

12. Internal administrative turmoil ensued among the Board of Trustees between 2008 through 2013 over the mismanagement of the administration's funds.

13. Defendant Howard's urgent need to turnaround the dispirited voices of the student body and Defendant Howard's declining national rankings/reputation led to President Ribeau's abrupt resignation in October 2013.

14. President Wayne A.I. Frederick (hereinafter "President Frederick") was appointed as the new President of the Defendant Howard in 2014.

15. Mr. Hankerson continued his role as a student-employee during the transition until 2015 when he graduated from the undergraduate program *summa cum laude*, and was selected to be the student speaker at the May 2015 Defendant Howard's Graduation Commencement Address.

16. Mr. Hankerson applied and matriculated into Howard University's School of Law in August 2015.

17. On or about December 2016, President Frederick after an internal investigation contended that Defendant Howard's employees in the Financial Aid Office were misappropriating university grant funds. According to President Frederick the investigation revealed that the misappropriation of university grant funds by staff in the Financial Aid Office had gone on for over 10 years, even before and after Mr. Hankerson's employment at the school.

18. At this time, Mr. Hankerson had already stopped working as a student-employee at the Financial Aid Office to concentrate on his legal studies at Howard University School of Law.

19. Six months later, in May 2017, President Frederick received reports from an audit investigation that from 2007 to 2016, for almost a decade, Defendant Howard's grants were given to some of Defendant Howard's employees who also received tuition remission.

20. President Frederick thereafter conducted an internal investigation to ascertain the recipients of university grants. Four months later, in September 2017, six employees were fired for gross misconduct and for receiving an exceeding amount of university grant funds while receiving tuition remission.

21. Mr. Hankerson was not one of the six employees fired.

22. Mr. Hankerson was never accused of being one of the six.

23. Mr. Hankerson was never investigated or called in to any meetings related to the six employees or the mismanagement of funds during his employment with the school.

24. Specifically, President Frederick's investigation did not result in allegations against Mr. Hankerson as one of the alleged employees who received inappropriate funds.

25. Neither Defendant Howard nor the Department of Education brought any charges against Mr. Hankerson for any alleged misappropriation or embezzlement of university grant funds as of this date of the filing.

26.  Although the six employees were fired back in September 2017, it was conducted quietly without public knowledge or the student body's knowledge.

27. Meanwhile, Mr. Hankerson was attending law school and continued to excel in his studies.

28. His academic merits and promise as a blossoming young attorney lead him to receive grant opportunities to study abroad and fund his legal education.

29. Coming from a humble background, Mr. Hankerson had the academic drive and persistence to network and to begin building his image of success. Like many other millennials of his generation, he used social media as his platform to build his brand persona and desirous image of success.

30. Back on campus, from September 2017 to March 2018, the dispirited voices of students increased regarding the continuous issues of the lack of university grant funding for students, the increasing tuition fees and strict policies for registration.

31. Such turmoil led to the cataclysmic event on March 25, 2018 that resulted in a student protest and demand for President Frederick's immediate resignation, among other student demands.

32. Against this backdrop of the student protest, on or about March 27, 2018, Medium.com (hereinafter "Medium") released a national news story seen by millions.

33. An anonymous student-employee and hacker working in Defendant Howard's Financial Aid Office, who is now alleged to be Defendant Grant Grundy ("Mr. Grundy"), released an article on  Medium's website about the problems at Howard.

34. The salacious blog was written by a student who allegedly used the name "Veritas1867" (the founding year of Howard) and stated  many allegations, including the most serious one, that for a decade, Defendant Howard financial aid employees have been stealing over One Million Dollars ($1,000,000.00) of funds designated for low-income students.

35.  To create an image of the historic pattern of abuse of financial aid funds and to make the story newsworthy, Mr. Grundy allegedly released Mr. Hankerson's name and financial information, knowingly implying that Mr. Hankerson was one of the six employees fired, even though Mr. Grundy knew it was totally false.

36. The article as written by the blogger "Veritas1867" and including Defendant Grundy, under an alias as "Chase", a student at Howard, was released to millions and accused Mr. Hankerson of stealing over Four Hundred Thousand Dollars ($400,000.00) in university grant funds.

6

37. Strategically, Defendant Grundy released an unexplained snapshot of Mr. Hankerson's financial aid grants, merit scholarships, loans and related financials without explaining that Mr. Hankerson had been a student for seven (7) years and studied abroad in the summers.

38. Mr. Grundy, a Defendant Howard student-employee within the Financial Aid Office, allegedly knew that the allegations set forth in his article against Mr. Hankerson were false and would severely injure Mr. Hankerson's reputation.

39. Immediately upon publication of the article, Mr. Hankerson endured public humiliation, defamatory statements made against him on television, radio and the internet.

40. Mr. Hankerson also endured reputational and potential physical harm as students suddenly targeted Mr. Hankerson as the person who was the cause of the lack of university funding to assist students in financial need. (See Exhibit A).

41. As news reports continued to isolate Mr. Hankerson erroneously as the fall-person, Defendant Howard failed to take corrective action to report the misrepresentation of facts and clear Mr. Hankerson's name.

42. On March 31, 2018, Mr. Hankerson's Attorney James L. Walker, Jr., sent Defendant Howard a demand letter for Defendant Howard to issue a letter of apology to Mr. Hankerson, release a public statement exonerating Mr. Hankerson, and terminate the employee who leaked the financial records.

43. To date, Defendant Howard has failed to respond substantively or apologize, and has allowed Mr. Hankerson's personal and professional reputation to be damaged as he is used as the scapegoat for Defendant Howard's wrongdoings.

44. As a result of the misinformation shared with media, millions of people nationwide have a false narrative and impression of Mr. Hankerson.

45. Mr. Hankerson lost a job where he would have been making nearly Two Hundred Thousand Dollars ($200,00.00) annually. He was scheduled to commence full-time work this summer, but the employment has been terminated for all intents and purposes.

46. To cope with the severe stress of these events, coupled with his job loss and concern over his preparation for the bar exam and future, Mr. Hankerson has had to see a therapist to calm his constant anxiety caused by Defendant Howard and Grundy's negligent behavior.

47. As Mr. Hankerson's personal and professional reputation has been harmed, he is now seeking redress from the Court in a suit against the Defendant Howard.

### CAUSES OF ACTION

### COUNT I

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

48. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 47 as if such allegations were set forth herein in their entirety.

49. Under longstanding D.C. law, courts have held Defendants liable for intentional infliction of emotional distress where it can be shown that the actions of the Defendants were a) extreme and outrageous; b) were intentional or reckless; and c) caused the Plaintiff severe emotional suffering.

50. Defendant Grundy's actions, as an agent of Defendant Howard and Trustee Board, in releasing and disclosing Mr. Hankerson's financial aid records was beyond extreme and outrageous.

51. Defendants Howard, Trustee Board and Defendant Grundy knew or should have known that the disclosure of the records was in violation of longstanding duties of care to a student

like Mr. Hankerson, in violation of privacy laws, and a violation of the University's promises, per the policies outlined in the Student Handbook.

52. Defendants Howard, Trustee Board and Defendant Grundy knew that with the student protest and media attention regarding mismanagement and misappropriations of financial aid that the disclosure would have a negative and misleading effect on Mr. Hankerson's reputation and emotional stability.

53. At the time of the disclosure of his financial records, Mr. Hankerson was preparing to graduate from Defendant Howard's School of Law. He was actively taking his final exams which would reflect on his ability to pass or fail his final classes.

54. In addition, Defendants Howard, Trustee Board and Defendant Grundy knew or should have known that the disclosure would cause Mr. Hankerson to be a target of cyberbullying, violent physical threats and media criminalization and failed to show a normal duty of care and protection for the records of a student.

55. Defendant Grundy, as an agent/employee of Defendant Howard's Office of the Bursar, intentionally and without regard for Mr. Hankerson, disclosed Mr. Hankerson's financial aid records to a public and online publishing platform, Medium. Upon information and belief, Defendants Howard, Trustee Board, Grundy and Frederick, acted with malice entitling Mr. Hankerson to exemplary and punitive damages.

56. Although Defendants Howard and the Trustee Board's actual or constructive knowledge that Mr. Hankerson's student records had been released and was causing severe emotional distress and pain worldwide for him, they refused to rectify the actions, despite numerous emails, calls and messages from representatives of Mr. Hankerson pleading with the University to stop the pain and stress of Mr. Hankerson.

57. Due to Defendants Howard, the Trustee Board and Defendant Grundy disclosing the financial aid records of Mr. Hankerson and doing nothing thereafter to mitigate the pain and damage, he has suffered severe emotional distress including depression and anxiety.

58. As a proximate result of the above actions by Defendants Howard, Trustee Board, Frederick and Grundy, Mr. Hankerson has suffered reputational harm, shame, mortification and emotional distress and employment opportunities and lost millions in income.

## COUNT II

### NEGLIGENT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 58 as if such allegations were set forth herein in their entirety.

60. Under longstanding D.C. law, courts have held Defendants liable for the negligent intentional infliction of emotional distress where it can be proven that defendant a) has a duty and/or special relationship to plaintiff; b) defendant breached that duty of care; and c) as a result of defendant's action, the Plaintiff was caused serious emotional distress.

61. Pursuant to Section 400-011 of the Student Handbook (Exhibit B), Defendant Howard has a special duty of care to "maintain a safe and healthy living, learning and working environment for students, faculty and staff free of harassment, exploitation, or intimidation."

62. As an agent/employee of the University, Defendant Grundy is also held to this duty of care.

63. As Trustees of the University, the Trustee Board is expected to operate the school with a certain duty of care as officers and agents of the University.

64. Defendants Howard, Trustee Board and Frederick breached such duty through Grundy's negligent act of releasing Mr. Hankerson's name to the public and falsely accusing him of stealing over Four Hundred Thousand Dollars ($400,000.00) from the University.

65. Defendants also breached such duty through Defendant Howard's inaction to take immediate corrective action to exonerate Mr. Hankerson from the accusations alleged and allowing for the cyberbullying and stalking that has ensued as a result of Defendant Grundy's accusations.

66. Specifically, Defendants Howard and the Trustee Board are just as liable as Mr. Grundy, in that once they learned that Mr. Hankerson's records had been released and was causing severe emotional distress and pain for Mr. Hankerson, they refused to rectify the actions, despite numerous emails, calls and messages from representatives of Mr. Hankerson pleading with the University to stop his pain and stress.

67. Defendants' actions and omission to act have caused Mr. Hankerson severe emotional distress, to which he thereby seeks compensatory damages for emotional distress, and pecuniary damages.

**COUNT III**

**DEFAMATION (LIBEL PER SE) AGAINST DEFENDANT GRUNDY**

68. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 67 as if such allegations were set forth herein in their entirety.

69. Under longstanding D.C. law, courts have held Defendants liable for libel as a form of Defamation where it can be shown a) the defendant made a false, written statement concerning the plaintiff committing a serious crime; b) the defendant published the

statement without privilege to a third party; and c) the defendant's fault in publishing the statement amounted to at least negligence.

70. Defendant Grundy negligently and recklessly made false statements about Mr. Hankerson by accusing him of a serious crime of stealing over Four Hundred Thousand Dollars ($400,000.00) and implying that Mr. Hankerson was one of the six employees fired from Defendant Howard for stealing over One Million Dollars ($1,000.000.00).

71. Defendant Grundy published these libelous statements through the media platform Medium.com for millions of viewers to read as Medium.com has millions of followers on social media.

72. Defendant Grundy, as an agent of Defendants Howard and Trustee Board, knew very well that Mr. Hankerson did not even attend Howard during the years of 2007 through 2010. Mr. Hankerson began matriculation at Defendant Howard in the Fall of 2011 and graduated *summa cum laude* without any discipline or financial investigation.

73. Noting the current student protest on the campus at Defendant Howard regarding financial misappropriation, he published the libelous information with media outlets, knowing it would enrage the students and community at large, with Mr. Hankerson as the villain and wrongfully implicated criminal in the process.

74. As a result of Defendant Grundy's libelous statements, Mr. Hankerson has lost his employment and his professional reputation has been severely damaged because of the publication of these false accusations.

75. Mr. Hankerson has also been cyber bullied (See Exhibit A), mocked in his law classes, and a target of constant harassment via email, text and comments made everywhere he goes in the Washington, D.C. area and elsewhere.

76. As a result, Mr. Hankerson thereby seeks damages in an amount to be determined at trial. And, it is estimated Mr. Hankerson could stand to lose a minimum of over Ten Million Dollars ($10,000,000.00) in a 45 year legal career, now forever tarnished by the acts of Defendants.

**COUNT IV**

**INVASION OF PRIVACY WITH THE PUBLIC DISCLOSURE OF PRIVATE FACTS**

77. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 76 as if such allegations were set forth herein in their entirety.

78.  Case law is clear that an invasion of privacy can be made when a Plaintiff can show a) publication; b) of private facts; c) in which the public has no legitimate concern; and d) the publication of which would cause suffering, shame or humiliation to a person of ordinary sensibilities.

79. In the Medium.com post, Defendant Grundy, as an agent of Defendants Howard, Trustee Board, and Frederick, intentionally disclosed Mr. Hankerson's private personal information, including his name to the public and information that Mr. Hankerson was the recipient of grants and Defendant Howard's educational institution funding.

80. Mr. Hankerson's student information was of no legitimate concern to the public, as he was not one of the six employees investigated and terminated.

81. Defendant Grundy's erroneous information and egregiously false accusations as a "Scammer" and "Embezzler" have caused Mr. Hankerson severe public scrutiny from millions worldwide. (See Exhibit A).

82. Due to the release of Mr. Hankerson's personal and financial aid information from Defendant Howard, he has suffered humiliation, emotional distress and even the loss of his employment.

83. As Defendant Grundy obtained Mr. Hankerson's information while acting in the role of an agent/employee of the University, Defendant Howard, Defendant Trustee Board and Defendant Frederick are vicariously liable.

84. Mr. Hankerson has seen the runing of a legal career that could have earned him Ten Million Dollars ($10,000,000.00) over the course of his career and seeks compensatory damages, damages for the severe emotional distress, and pecuniary damages.

**COUNT V**

**TORT OF FALSE LIGHT**

85. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 84 as if such allegations were set forth herein in their entirety.

86. Longstanding case law recognizes a legally actionable claim when a plaintiff is put in a false light and harmed as a result.  False light is where the following elements exist: a) public disclosure; b) of a false statement, representation or imputation; c) about the plaintiff; d) that a reasonable person would find highly offensive.

87. Mr. Grundy publicly released false statements that Mr. Hankerson stole over Four Hundred Thousand Dollars ($400,000.00) in University funds and falsely accused Mr. Hankerson of having access to administering these funds during his student employment in Defendant Howard's Financial Aid Office while in undergraduate studies from 2011 - 2015.

88. Any reasonable person would find this information highly offensive, as it is accusing Mr. Hankerson of not only a serious crime, but also the cause of hundreds of students being denied funding to obtain their education.

89. As a result of these false statements, Mr. Hankerson has suffered emotional distress and is hated by thousands of people nationwide, many of which attended Howard University and had issues with financial aid or securing grants and scholarships.

90. As Defendant Grundy made these accusations from hacking into Mr. Hankerson's account, he was still employed with the University.  Thus, Defendants Howard, Trustee Board and Defendant Frederick are vicariously liable.

91. Mr. Hankerson has lost millions in potential earnings and thereby seeks compensatory damages, damages for emotional distress, and pecuniary damages.

**COUNT VI**

**BREACH OF CONTRACT**

92. Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 91 as if such allegations were set forth herein in their entirety.

93. Pursuant to Section III(1)(c) of Howard University's Student Handbook (the "Student Handbook"), Defendant Howard grants the following promise that students shall have the right to "privacy in accordance with the provisions established by the Family Educational Rights and Privacy Act of 1974 ("FERPA").

94. Pursuant to the Student Privacy Rights in the Student Handbook (See Exhibit B), Defendant Howard further promises to protect student information under FERPA policies and promises to ensure that this policy "is strictly adhered to by all University administrators, staff and faculty members creating, possessing and/or maintaining any

written records/documents pertaining to student and their behavior, academic performance or any other matter during their matriculation at the University."

95. Defendants Howard and Trustee Board further promise to sanction any individual who violates this provision of the Student Handbook, including separation from the University. (Exhibit B, pg. 119).

96. Pursuant to Defendant Howard's Student Handbook, each trustee, student, faculty member and administrative employee must be bound by this common duty in the pursuit of their individual responsibility to the educational objectives of the University.  (Exhibit B, pg. 120).

97. Per the policies outlined in the Student Handbook, Defendants Howard, Trustee Board, Frederick and Grundy entered into an enforceable agreement with Mr. Hankerson.

98. Defendants Howard and Grundy promised to comply with the policy protections under FERPA in the Student Handbook and refrain from disclosure of information without Mr. Hankerson's consent.

99. Defendants Howard University and the Board of Trustees and Frederick breached their promise.

100. Defendants' breach was a material breach that was a direct, proximate cause of Mr. Hankerson's harm that resulted in his name all over media and the subsequent loss of his job.

101. As a result, Mr. Hankerson seeks compensatory damages, the immediate termination of Mr. Grundy, and punitive damages.

## COUNT VII

### DECLARATORY JUDGMENT

102.  Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 101 as if such allegations were set forth herein in their entirety.

103.  Defendants' refusal to protect Mr. Hankerson's private information and exonerate him from the crimes alleged against him in the media and on campus are violations of their responsibilities under the Student Handbook.

104.  Defendant's refusal to comply will continue to cause Mr. Hankerson to sustain irreparable harm.

105.  Mr. Hankerson should be entitled to a declaratory judgment, pursuant to 28. U.S.C. §2201 that 1) Mr. Hankerson did not steal University funds; 2) that Mr. Hankerson was not one of the six employees investigated and terminated; and 3) enjoin the Defendants from any further illegal release of Mr. Hankerson's student files; and 4) require that Defendants release a public apology clearing Mr. Hankerson from the alleged accusations and defamation.

### **PRAYER FOR RELIEF**

Due to the actions of Defendants, Plaintiff has been placed in an unfair and unfortunate financial position and has a humiliation and life story that will never be the same with millions lost in income. On account of this, Plaintiff prays for:

(a)     Compensatory, economic and exemplary damages;

(b)     Declaratory judgment;

(b)     Reasonable attorney's fees and costs;

(c)     Pre and post judgment interests;

(d)     Court fees; and

(e)     Such other legal or equitable relief as this Court deems just and proper under all the

circumstances contained herein.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury.


Respectfully submitted this 9th day of April 2018.

/s/Christopher M. Young___
Christopher M. Young
DC Bar No. 1003301
The Young Law Firm, PLLC
1200 G. Street, NW Suite 800
Washington, D.C. 20005
Phone: (202) 870-1191
Fax: (202) 478-2119
Email: cyoung@theylf.com

Local Counsel for Plaintiff Mr. Hankerson

RENORDA E. PRYOR, *pro hac vice application pending*
Litigation Counsel for Mr. Hankerson
1821 Hillandale Road, Ste. 1B-220
Durham, North Carolina 27705
Tele: 919-355-5001
Fax:  919-355-4976
Email: rpryor@herringlawcenter.net
North Carolina Bar No. 36814

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing COMPLAINT was served

upon counsel of record with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to the following:


John G. Gloster, Esq.
2400 Sixth Street, N.W.
Washington, D.C. 20059


Respectfully submitted this the 9th day of April 2018.



                                                    ___/s/ Christopher M. Young____
                                                         Christopher M. Young
                                                          DC Bar No. 1003301
                                                        The Young Law Firm, PLLC
                                                    1200 G. Street, N.W. Suite 800
                                                         Washington, D.C. 20005
                                                         Phone: (202) 870-1191
                                                           Fax: (202) 478-2119
                                                        Email: cyoung@theylf.com
                                                 Local Counsel for Plaintiff Mr. Hankerson


                                            Renorda E. Pryor, pro hac vice application pending
                                                  Litigation Counsel for Mr. Hankerson
                                                     1821 Hillandale Road, Ste 1B-220
                                                     Durham, North Carolina 27705
                                                          Tele: (919) 355-5001
                                                           Fax: (919) 355-4976
                                                  Email: rpryor@herringlawcenter.net
                                                      North Carolina Bar No. 36814